UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH L. WALE,

      Plaintiff,              CIVIL ACTION NO. 16-cv-12211

      v.                            DISTRICT JUDGE MATTHEW F. LEITMAN

COMMISSIONER OF            MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Keith L. Wale seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 16) and Defendant's Motion for Summary Judgment (docket no. 21). Plaintiff filed a Reply (docket no. 22) to Defendant's Motion. The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 16) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 21) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a period of disability and disability insurance benefits on January 23, 2014, due to "Heart condition, hypertension, back problems, [and] low cholesterol."[1] (TR 17, 86.) The Social Security Administration denied Plaintiff's claims on July 7, 2014, and Plaintiff requested a *de novo* hearing. (TR 97, 111–12.) On October 21, 2015, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Kendra S. Kleber. (TR 42–55.) In a January 6, 2016 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 30–31.) The Appeals Council declined to review the ALJ's decision (TR 1–3), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently pending before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

The ALJ (TR 24–28) and Defendant (docket no. 21 at 6–15) each set out a detailed, factual summary of Plaintiff's medical record and the hearing testimony. Plaintiff briefly lists the medical evidence relevant to the arguments he raises. (Docket no. 16 at 6–10.) Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between these recitations of the record. Therefore, the undersigned will incorporate the factual recitations by reference. Additionally, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

---

[1] The undersigned notes that Plaintiff had previously filed an application for disability insurance benefits and supplemental security income in April 2005, but the SSA entered an Order of Dismissal for the case on June 13, 2008, due to Plaintiff's failure to appear at the administrative hearing. (TR 77–80.)

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2018; that Plaintiff had not engaged in substantial gainful activity since April 1, 2013; and that Plaintiff suffered from the following severe impairments: coronary artery disease with peripheral arterial disease/peripheral neuropathy, chronic obstructive pulmonary disease (COPD), lumbar degenerative disc disease and degenerative joint disease, and obesity. (TR 20–21.) The ALJ also found that Plaintiff had an incisional hernia, but that it was a non-severe impairment. (TR 21.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b). Specifically, at his best he is able to lift or carry up to 10 pounds occasionally or less than 10 pounds frequently. He is able to stand or walk for six hours of an eight hour work day for 60 minutes at a time, and able to sit for six hours of an eight hour work day, provided he is able to frequently elevate his legs at least 8–10 inches off the floor. He is able to occasionally climb stairs or ramps, but not able to climb ladders or scaffolds. He is able to stoop or crouch, but not able to kneel or crawl. He is able to perform work that does not involve concentrated exposure to extreme cold, extreme heat, wetness, or humidity. The work does not require exposure to fumes, dust, smoke or environmental pollutants. He may need to take unscheduled breaks of 5–10 minutes duration, similar to bathroom breaks, as often as 1–2 times per day.

(TR 23.) Subsequently, in reliance on the testimony of the Vocational Expert (VE), the ALJ determined that Plaintiff was not capable of performing his past relevant work, but that he had acquired skills that were transferrable to other occupations with jobs existing in significant numbers in the national economy. (TR 30–31.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from December 8, 2011, through the date of the ALJ's decision. (TR 31.)

3

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six

5

remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and remanded under sentence four for an award of benefits, or in the alternative remanded for a *de novo* administrative hearing, because, Plaintiff argues, the ALJ did not properly evaluate the opinion of Plaintiff's treating primary care physician, David Bremer, D.O., and because the ALJ performed an "improper transferable skills analysis." (Docket no. 16 at 2.)

1. *The ALJ's Assessment of Dr. David Bremer's Opinion*

Plaintiff first argues that the ALJ erred in her assessment of the opinion of David Bremer, D.O., Plaintiff's primary care physician. It is undisputed that Dr. Bremer is a treating physician and that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign to that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability

of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)–(6), 416.927(c)(2)–(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given

7

to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

The ALJ discussed Dr. Bremer's opinion as follows:

> As for the opinion evidence, in August 2014, Dr. Bremer completed a medical source statement indicating Mr. Wale has COPD, CAD, chronic low back pain, and depression. He has angina of left chest radiating to the left shoulder 2–3 times a week, after which he must rest for two hours. Increased stress causes increased angina symptoms. Dr. Bremer opined that Mr. Wale is incapable of even "low stress" work. He has depression because of his inability to support his family due to his health. Emotional factors affect his function. He can walk ½ block. Mr. Wale could sit a total of less than 2 hours to about 4 hours in an 8-hour workday; stand/walk a total of about 2 hours in an 8-hour workday; and would need to shift positions at will. He would need to take unscheduled breaks every ½ hour for 45–60 minutes before returning to work where he could sit quietly. Dr. Bremer further opined that Mr. Wale would need to elevate his legs 8–10 inches when seated, 80% of the workday, due to leg swelling. He could rarely lift less than 10 pounds; occasionally climb stairs; and never twist, stoop, crouch, or climb ladders. He would need to avoid even moderate exposure to extreme cold, extreme heat, high humidity, wetness, cigarette smoke, perfumes, and soldering fluxes. He would be "off task" 25% or more of the day and be absent from work more than four days per month. He is limited by chest pain and shortness of breath with exertion or stress. **I find these to be really significant limitations and the treatment records generally and specifically from Dr. Bremer (exhs. 5F, 6F, 7F and 8F) do not support them. Mr. Wale only developed significant back problems in April 2014, since which time cardiac has been absent from treatment notes, and although depression is noted as a problem, there is no diagnosis, no prescription and no referral. With the alleged onset date so early and some evidence of work activity after is (exh. 5F, p. 31), even though this doctor has treated Mr. Wale for years, I suspect these limitations refer to Mr. Wale at his worst — in acute phase of one thing or another. Since the residual functional capacity is to Mr. Wale at his best, I have given this opinion limited weight in forming the residual functional capacity and used the portions that are consistent with Dr. Bremer's own notes and the rest of the record.**

(TR 27–28 (emphasis added).) Plaintiff argues that "there is nothing discernable in the medical records inconsistent with Dr. Bremer's RFC opinion," and that the ALJ "did not provide good reasons for dismissing much of Dr. Bremer's opinion." (Docket no. 16 at 8–9.) Plaintiff then

8

lists a number of notes from Dr. Bremer's treatment records and from other sources, which, Plaintiff argues, are consistent with Dr. Bremer's opinion of Plaintiff's limitations. (Docket no. 16 at 6–7.) Plaintiff's arguments fail.

While Plaintiff presents evidence which does support his position, he is essentially asking the Court to reweigh the evidence and substitute its own judgment for that of the ALJ, which is not the Court's role. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). In addition to the notes Plaintiff cites, Dr. Bremer's notes also reflect that Plaintiff's medication does not cause him any side effects. (TR 539.) At least two exams showed normal respiratory effort, clear lungs without wheezing, rhonchi or rales, and a regular rate and rhythm of the heart. (TR 540, 545.) When Dr. Bremer did hear wheezing in Plaintiff's lungs, Dr. Bremer characterized it as "mild," and apparently related to a sinus infection. (TR 530, 601.) In February 2013, Dr. Bremer cleared Plaintiff to work as a firefighter, provided Plaintiff "limit his time in rescue phase." (TR 546.) A February 2014 chest exam with imaging showed "mild enlargement of the cardiopericardial silhouette," with "no evidence of acute disease." (TR 618.) The ALJ cites to the exhibits containing these findings. (*See* TR 27.)

Plaintiff cites to evidence showing a hernia, but the ALJ discussed Plaintiff's hernia, finding it to be a non-severe impairment and noting particularly that Plaintiff underwent a surgical repair of the hernia in March 2015 and that Plaintiff "worked with this condition prior to surgery." (TR 21.) Plaintiff also argues that there is evidence in the record showing "positive straight leg raise, sensitivity, tenderness, and swelling." (Docket no. 16 at 6.) However, that same evidence (a report from Daniel Leppek, Physical Therapist) provides that Plaintiff had "good rehabilitation potential" with the help of physical therapy and "progressive home exercise program." (TR 645–46.) It further provides that Plaintiff experienced pain "primarily when

sitting in a slumped posture, minimal to absent pain with neutral extension of the spine." (TR 645.)

Moreover, the ALJ specifically notes the absence of significant back problems prior to April 2014, despite the significant limitations opined by Dr. Bremer, and the fact that Dr. Bremer reported emotional problems which limit Plaintiff's abilities, but provided no mental health care or referral. (TR 27.) The ALJ also specifically notes the lengthy treatment relationship between Plaintiff and Dr. Bremer, which, when combined with Plaintiff's early alleged onset date and the fact that Plaintiff worked *after* the alleged onset date, does indeed suggest that Dr. Bremer's opinions could be attributable to the fact that Dr. Bremer has observed Plaintiff at his worst, "in acute phase of one thing or another." (TR 28.)

Plaintiff cites *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004), in support of his argument. However, that case is easily distinguishable from the case at bar. In *Wilson*, the Sixth Circuit described the ALJ's analysis of the treating physician's opinion as follows: "The ALJ stated in his ruling that he had 'considered' [the treating doctor's opinion], but concluded that while 'this opinion may be an accurate assessment of [Wilson's] current limitations, the undersigned must assess the claimant's limitations on March 31, 1995, the date he was last insured for benefits.'" *Id.* In other words, the ALJ in *Wilson* did not discuss any of the relevant factors. Indeed, it appears that the ALJ in that case believed the assessment by the treating doctor was accurate, just not timely. *Id.* Here, as set forth above, the ALJ's discussion is much more thorough and detailed.

It is clear from the above-quoted portion of the ALJ's opinion that the ALJ concluded that Dr. Bremer's opinion should not be afforded complete deference because it was not supported by Dr. Bremer's own clinical and medical findings, and then the ALJ discounted Dr.

Bremer's opinion based on its lack of supportability, despite acknowledging the nature and length of Plaintiff's relationship with Dr. Bremer. In sum, the undersigned finds that the ALJ adequately considered and addressed Dr. Bremer's opinion, and provided good reasons for assigning the opinion "limited weight," which reasons are supported by the evidence of record and are sufficiently specific to clarify the reasons for that weight. Plaintiff's Motion should be denied with regard to this issue.

2. *The ALJ's "transferable skills analysis"*

Plaintiff also argues that the ALJ erred in her Step 5 analysis in two ways. First, Plaintiff argues that the ALJ erred because the RFC she ultimately adopted differs from the RFC posed to the VE during the hearing. (*See* docket no. 16 at 9 ("First, the hypothetical used to deny Mr. Wale was different than the one read to the VE, specifically the one read to the VE included a two-hour total stand/walk limitation. It is unknown why this was changed yet the VE's response was the one used.").) This argument fails.

The ALJ first asked the VE if a person with Plaintiff's RFC[2] could perform Plaintiff's past work, to which the VE responded that Plaintiff could not. (TR 57–58.) The VE did, however, testify that such a person could perform a restricted range of light work, which would include an office helper, a production inspector, and a packager. (TR 57–60.) Later in the

---

[2] The undersigned notes that the first hypothetical posed to the VE did not include one or two unscheduled breaks per day, each five to ten minutes in duration, although this restriction was ultimately adopted by the ALJ. (TR 23; *see also* TR 57.) When asked about the additional, unscheduled breaks, the VE essentially testified that these sorts of breaks are typically allowed in most jobs:

> Yes, it would be an extra break, et cetera. But I really think as a rule, most people will require that extra bathroom break during the day as needed, when it cannot easily fit into a scheduled break or lunch times. And be that for five minutes, I don't really think that would be that unusual. And I think it would be allowed and would not change my answer at all.

(TR 60.)

11

hearing, the ALJ crafted a more restrictive RFC (limiting Plaintiff to two hours of walking standing vs. six in the original RFC), and the ALJ responded that there would still be jobs available; specifically, an insurance clerk and a circulation clerk.[3] (TR 66–69.)

The ALJ may have asked more restrictive hypothetical questions to the VE, but she adopted the RFC she originally posed to the VE (in response to which the VE testified that there were jobs available). (*Cf.* TR 57 *with* TR 23.) The ALJ simply posed increasingly restrictive RFCs to the VE, which is certainly permitted and as Defendant points out, even customary. (Docket no. 21 at 22.) As the undersigned has previously explained:

> Notably, an ALJ typically asks hypothetical questions that are more limiting than the plaintiff's ultimately RFC because the ALJ needs a broad basis under which to make a determination. That is, if the ALJ does not ask such questions and ultimately determines that a plaintiff's RFC is more restrictive than the limitations posed in the hypothetical question, the ALJ would have no relevant testimony from the VE to assist in making a determination. Plaintiff's argument that the ALJ must adopt an RFC based on any one hypothetical question presented to the VE has no basis in law . . . .

*Powers v. Comm'r of Soc. Sec.*, No. 13-10575, 2014 WL 861541, at *5 (E.D. Mich. March 5, 2014) (order adopting quoted report & recommendation). Therefore, Plaintiff's first argument concerning the ALJ's Step 5 determination should be rejected.

Plaintiff's second argument concerns the ALJ's finding that Plaintiff acquired transferable general clerical skills in his past work, specifically in Plaintiff's past work as the director of operations for an emergency response company. (Docket no. 16 at 9–10.) Plaintiff

---

[3] These are sedentary jobs which also require that Plaintiff have transferable clerical skills. (TR 64–69.) Nevertheless, as Defendant points out, the applicable regulations provide that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." (*See* docket no. 21 at 23 (citing 20 C.F.R. § 404.1567(b); *Garcia v. Comm'r of Soc. Sec.*, No. 08-12943, 2009 WL 2843922, at *12 (E.D. Mich. Aug. 31, 2009).) And, as addressed below, the undersigned concludes that the ALJ's finding that Plaintiff has transferrable general clerical skills is sufficiently supported.

argues that the ALJ erred in finding that Plaintiff acquired any "transferable skills," because all of the clerical work Plaintiff performed was simple and unskilled. (*Id.*)

Plaintiff fails to explain how this finding (assuming it is incorrect) constitutes reversible error in light of the fact that the VE testified that there are unskilled jobs available to a person with Plaintiff's RFC. (TR 57–60.) Regardless, however, the undersigned finds there is substantial evidence in the record to support the ALJ's finding. The VE testified (admittedly in a somewhat confusing manner) that unskilled clerical work "would not involve . . . working on a computer, doing any sort of e-mail work, things like that," but would rather involve "collating, sorting, stuffing envelope[s]." (TR 72.) The VE further testified that Plaintiff's work as the director of operations for an emergency response company would involve more skilled clerical tasks. (*Id.*) The VE explained that:

> I'm suggesting as a director of operations—and in fact one who—one who has been through EMT training . . . One who can handle that, operate at that level, deal with the clerical, et cetera, abilities that are . . . needed in a job like that. I think they can easily do this more dedicated clerical type work at a semi-skilled level, again, without a great degree of vocational adjustment.

(TR 73; *see also* SSR 82-41, 1982 WL 31389, at *6 ("where job skills have universal applicability across industry lines, e.g., clerical, professional, administrative, or managerial types of jobs, transferability of skills to industries differing from past work experience can usually be accomplished with very little, if any, vocational adjustment where jobs with similar skills can be identified as being within an individual's RFC"). Plaintiff's adult function report confirms that he had to "use technical knowledge or skills," and write and complete reports. (TR 218.) He also testified that he had to "take daily records" and "go to meetings." (TR 43.) Thus, Plaintiff's second Step 5 argument should also be rejected.

## VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 16) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 21).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 16, 2017            s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated:  August 16, 2017          s/Leanne Hosking
                                 Case Manager Generalist